117 N.J. Super. 372 (1971)
285 A.2d 23
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOSEPH WILLIAMS, JR., DEFENDANT-APPELLANT.
A-1993-68.
Superior Court of New Jersey, Appellate Division.
Argued December 22, 1970.
Decided April 12, 1971.
*373 Before Judges LEWIS, MATTHEWS and MINTZ.
Mr. Stanley R. Bright, assigned counsel, argued the cause for appellant.
*374 Mr. R. Benjamin Cohen, Assistant Prosecutor, argued the cause for respondent (Mr. Joseph P. Lordi, Essex County Prosecutor, attorney; Mr. David S. Baime, Assistant Prosecutor, of counsel; Mr. Anthony J. Fusco, Jr., legal assistant, on the brief).
The opinion of the court was delivered by MINTZ, J.A.D.
Defendant appeals from a judgment of conviction after a jury trial for unlawful possession of heroin. On this appeal he argues that the trial court erred in denying his motion to suppress the bags of heroin found in his motor vehicle, which he claims were seized in violation of his rights under the Fourth Amendment of the Constitution of the United States.
The facts surrounding the search and seizure are not seriously disputed. As the result of complaints received by the police of "narcotics activity" in the area of Orange and Nesbitt Streets in the City of Newark, that City's narcotics squad conducted a surveillance of the area commencing about 11:00 P.M. on August 20, 1968. The police testified that at about this time they observed defendant park his white Cadillac at the curb and engage in conversation with an individual who was a known narcotics offender. No other conduct was observed between these individuals. Defendant then drove away and left the area. Approximately 1 1/2 to 1 3/4 hours later, he returned to the area in the same motor vehicle, this time accompanied by two females. The known narcotics user with whom he had been seen conversing earlier was no longer present. As soon as defendant parked his automobile, a police car pulled up and parked behind him. A police officer and two detectives got out of the police car and approached defendant who was seated in his automobile.
The police officer testified that he "possibly" intended to ask defendant for his automobile registration, which he had a right to do. N.J.S.A. 39:3-29. However, before he had a chance to do so, he observed defendant look toward him *375 as he approached the car, and make a downward furtive motion, throwing a pink package to the floor of the car. One of the detectives reached into the automobile and retrieved the pink package which contained 114 decks of heroin (seven stacks).
We find that the motion to suppress was properly denied. Initially, we observe that one of the well-established exceptions to the general requirement that a search warrant is necessary is when the attendant circumstances are exigent or emergent. State v. Dennis, 113 N.J. Super. 292, 297 (App. Div. 1971). Clearly such circumstances here existed.
We conclude that probable cause justified the instant search. Probable cause has been defined as a reasonable basis for a belief that a crime has been or is being committed. State v. Contursi, 44 N.J. 422, 429 (1965). As observed in State v. Kasabucki, 52 N.J. 110:
Probable cause is a flexible, nontechnical concept. It includes a conscious balancing of the governmental need for enforcement of the criminal law against the citizens' constitutionally protected right of privacy. It must be regarded as representing an effort to accommodate those often competing interests so as to serve them both in a practical fashion without unduly hampering the one or unreasonably impairing the significant content of the other (at 116).
The use or sale of illegal drugs, which has reached alarming proportions, is carried on "cautiously and furtively and in as many different ways and by as many conceivable methods as human ingenuity can devise in order to escape detection and criminal consequences * * *." See State v. Romeo, 43 N.J. 188, 207 (1964). In this framework the total circumstances are to be assessed. State v. Contursi, supra, 44 N.J. at 431.
In appraising the factual situation we are mindful that a police officer is not a constitutional lawyer. When assessing the quality of his conduct, "the common and specialized experience and work-a-day knowledge of policemen must be taken into account" and the entire transaction considered "in a common-sense and realistic fashion." State v. Contursi, *376 supra, 44 N.J. at 431; State v. Dennis, 113 N.J. Super. 292 (App. Div. 1971).
In the instant situation the police officer observed the earlier conversation between defendant and a known narcotics offender, in an area known for narcotics activity. Later he observed defendant's return to the scene where defendant parked. Especially significant was the downward, furtive dropping of the pink "package" or "object" to the floor of the car as the officer approached. Under the total circumstances there was probable cause to justify the retrieving of the pink "package" or "object."
Although the police officer on cross-examination stated that he had seen pink tissue in supermarkets similar to that removed from defendant's vehicle, this does not indicate a lack of probable cause. The fact that pink tissue is common does not mean that it cannot be used to "package" illegal drugs and, when appearing in this form together will all the other factors previously alluded to, give rise to probable cause.
The judgment of conviction is affirmed.
MATTHEWS, J.A.D. (dissenting).
It is apparent that the 114 bags of heroin have obstructed the view that my brothers have of the facts of this case. The trial judge was just as myopic. Hindsight, however, is not relevant to the provisions of the Fourth Amendment to the Constitution of the United States under any construction, strict or otherwise.
I accept the facts as stated by the majority, except to observe that there was no "pink package." The object of the seizure was described generally by the officers as a "pink object" and specifically:
Q  And what exactly did you see?
A  A pink object fall to the floor board of the car.
Q  He didn't try and throw it out the window, did he?
A  No, sir.
Q  How big was this pink object?
*377 A  As big as a paper or a tissue would be crumpled up with seven stacks of glassine envelopes in it.
Q  Was this paper, this pink paper crumpled up?
A  Yes, sir.
Q  It was like a napkin, wasn't it?
A  Tissue, yeah.
Q  Tissue. Was it a napkin, or was it a tissue like you use to blow your nose, or was it like a napkin that you use when you wipe your face after you eat?
A  A tissue.
Q  Like you use to blow your nose?
A  Yes. Some people use napkins too.
Nothing confronting the officers, as they approached defendant's car, gave rise to an "emergent" or "exigent" situation. There was no apparent threat to the safety of anyone, unless, of course, the officers feared that germs might be spread because of the discarded tissue. Compare: State v. Dennis, 113 N.J. Super. 292 (App. Div. 1971).
While I am fully cognizant of the so-called "dropsy" rule which holds that objects falling in plain view of a police officer (who has a right to be in a position to have that view) are subject to lawful seizure, see State v. Di Rienzo, 53 N.J. 360 (1959), I cannot accept that the rule dispenses with the constitutional mandate that a police officer can enter the vehicle of a private citizen only upon probable cause. That no probable cause (to believe that the pink tissue was or contained contraband) existed here is borne out by a rather amusing colloquy which took place at the hearing on the motion to suppress. Sergeant Bimbo, the police officer at the scene, was being interrogated by the Assistant Prosecutor as to his familiarity, and, I suppose, expertise, with pink tissues:
Q  Have you ever seen a pink tissue like the one you saw at 12:45 this evening before?
A  Yes, sir.
Q  Where?
MR. SACHS: Where what? I object, what is the purpose of this?
Q  Where have you seen it, or one like it?
MR. SACHS: I object to the question.
*378 THE COURT: I will permit it.
A  The pink tissue?
Q  Yes.
A  Supermarkets.
Probable cause is said to exist when the facts and circumstances within the knowledge of the police are sufficient to warrant a man of reasonable caution to believe that an offense has been or is being committed. See e.g., Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1924); Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); State v. Burnett, 42 N.J. 377 (1964). The crucial distinction that must be made is between "probable cause" and "mere suspicion"; the latter is never sufficient to justify an intrusion into the privacy of a defendant  be it his home or his automobile. Cf. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); Whitely v. Warden, Wyoming State Penitentiary, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971). Under the circumstances presented in this case, there was no activity of the defendant at the time that he discarded the pink tissue inside of his automobile which could possibly have given the investigating officers probable cause to believe that a crime was being committed. There is nothing in the record to show that defendant had ever been associated with narcotics offenses prior to this arrest. In short, the record plainly shows that the police "suspected" that defendant may have been engaging in narcotics traffic and decided to "shake him down." The results may have been gratifying from the police standpoint  however, they violated defendant's rights guaranteed to him under the Fourth Amendment.
I would reverse.