450 So.2d 718 (1984)
STATE of Louisiana
v.
George MAYO.
No. KA-1302.
Court of Appeal of Louisiana, Fourth Circuit.
May 10, 1984.
Writ Denied June 15, 1984.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Joanne C. Marier, Mary Charlotte McMullan, Asst. Dist. Attys., New Orleans, for plaintiff-appellee, State of La.
John E. Unsworth, Jr., New Orleans, for defendant-appellant.
Before REDMANN, C.J., and GARRISON and WARD, JJ.
WARD, Judge.
George Mayo was charged by bill of information with committing the offense of possession of cocaine in violation of La.R.S. 40:967. He was convicted by a jury of the lesser included offense, attempted possession of cocaine.
Mayo contends that the warrantless search of the automobile which yielded the cocaine violated his constitutional rights and that the Trial Judge erred in denying his Motion to Suppress the cocaine.
Evidence introduced during trial shows that George Mayo was at a French Quarter *719 bar during the early morning of March 24, 1983 when he agreed to drive a friend, Michael Parks, home. After driving to Parks' residence on North Rampart Street, the two men remained in the parked car with the engine running and the lights off.
The arresting officers who conducted the search were patrolling the area in a police vehicle when they saw the men in the car and noticed a third man walking around a used car lot across the street from Mayo's parked vehicle. They stopped to investigate, and as they walked up to the car where Mayo and Parks were sitting, Parks opened the passenger door to get out, and the interior light went on. The officer then saw George Mayo motion with his hand toward the floorboard of the car. Parks approached the officers and told them that everything was all right and that he lived in the building next to the lot. The officers ordered Mayo out of the car, brought both men to the front of the automobile, and searched them for weapons. None were found. One of the officers returned to the car and searched the driver's side where she found an amber colored vial on the floorboard. Believing the vial contained narcotics, she arrested Mayo and Parks. A chemical analysis showed the substance to cocaine, and the District Attorney charged Mayo with possession of the cocaine in the vial.
The only issue this court need decide is whether the warrantless search of the automobile was valid. Mayo alleges the evidence was seized in violation of his fourth amendment rights because there was no reasonable basis for the officers to stop and question either of the men in the car, and that even if there was, once the pat down showed they did not possess weapons, the officers did not have probable cause to search the car.
The State of Louisiana contends both the initial stop and subsequent search of the men and the car were lawful. The State argues that the facts gave rise to "reasonable suspicion" of criminal activity and that the officers were justified in patting down Mayo for weapons and for searching for a weapon in the car.
Warrantless searches are not favored by the law. While the Fourth Amendment requires a warrant before a search and seizure, certain exceptions, such as a stop and frisk, an automobile search, or evidence in plain view, have been recognized. The purpose of limiting warrantless searches to certain recognized exceptions is to preserve the constitutional safeguards provided by a warrant, while accomodating the necessity of warrantless searches under special circumstances. Donovan v. Dewey, 452 U.S. 594, 101 S.Ct. 2534, 69 L.Ed.2d 262 (1981); Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967).
In Terry v. Ohio, the United States Supreme Court created the "stop and frisk" exception, a warrantless search limited to a "pat down" of outer clothing when an officer believes a suspect might be armed. Protection of the officer is the sole justification of a Terry stop and frisk. To justify a stop and frisk, the officer must have a reasonable suspicion that criminal activity is being committed or is about to be committed, and that suspicion must be based on specific and articulable facts which, taken together with rational inferences from those facts.
We find the initial stop and frisk valid. We believe the following facts gave rise to a "reasonable suspicion", permitting the officers to stop and question Mayo and his friend and to conduct a limited search for weapons. The officers observed a stopped car with lights out and engine running at 2:30 a.m. near a used car lot. They observed not only the two men in the car but also another walking around the lot. It reasonably appeared the man in the lot was stealing cars, and that Parks and Mayo were "lookouts driving a getaway car". Although further investigation showed the man in the lot was a night watchman employed by the used car lot, this does not alter the conclusion that the officers reasonably believed criminal activity was *720 afoot. Therefore, a limited search for weapons was justified for the officers' protection and safety.
However, Terry does not justify the search of the automobile's interior. The State must rely on another exception to the warrant requirement, the automobile exception. In United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), the Court held that the scope of a warrantless search of an automobile is that which a magistrate could authorize. "Since the scope of a search authorized by a magistrate is determined by the object of the search and the places where there is probable cause to believe that the object may be found, the scope of a warrantless search based on probable cause also should be determined by the object of the search and the places where there is probable cause to believe it may be found." Jensen, The Scope of Warrantless Searches Under the Automobile Exception: United States v. Ross, 43 La.L.R. 1561 (1983).
The facts of the instant case do not justify the probable cause contemplated by the Ross court, for they do not provide the degree of knowledge that would allow a neutral and detached magistrate to authorize a search warrant. A warrantless search is no broader or narrower than a magistrate could authorize. In this case, we do not believe a magistrate could reasonably conclude that probable cause existed to believe that Mayo threw down a weapon on the floorboard or that a weapon was present in his car. Hence, the state cannot justify the warrantless search of Mayo's automobile.
The State relies on Michigan v. Long, ___ U.S. ___, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), in support of its contention that the officers had probable cause, or alternatively, that the police did not exceed their authority under the Terry exception.
But the facts of Michigan v. Long which the Supreme Court held justified the officer's search for weapons inside the automobile are distinguishable from those in George Mayo's case. In Michigan v. Long, police officers observed a car erratically travelling in a rural area at night at an excessive rate of speed. The car swerved into a ditch, and the officers stopped to investigate. The driver "appeared to be under the influence of something", and did not respond to a request for his license and registration. The officers searched the interior of the car only after the driver moved toward the open door of the car and only after they observed a knife on the floorboard of the driver's side of the car. These facts were sufficient for a neutral and detached magistrate to conclude there existed probable cause to search the interior of the vehicle for weapons in addition to the knife. Moreover, while conducting a valid search for additional weapons, the officers observed a glosseine envelope under the arm rest. They did not have to open the envelopes to know it was marijuana; the envelope was transparent and the marijuana was in plain view and could be seized.
Michigan v. Long did not purport to overrule or modify United States v. Ross or other automobile exception cases nor did it develop a new standard to test the constitutionality of searches pursuant to the automobile exception. Michigan v. Long presents an example of facts which will justify a warrantless search of the interior of a car.
The State also relies on another exception and contends the cocaine was discovered in plain view. But this means the officers had a right to enter the vehicle to search it, and the cocaine was inadvertently seen. However, in this instance, considering the facts in this case, we do not believe the officers had a right to enter or search the vehicle. We therefore do not have to decide the interesting question of whether cocaine contained in an amber colored vial on the floorboard is in plain view. See State v. Hernandez, 410 So.2d 1381 (La. 1982).
For the above reasons, we hold the Trial Court erred in denying George Mayo's Motion to Suppress.
REVERSED.
REDMANN, C.J., dissents with reasons.
*721 REDMANN, Chief Judge, dissenting.
The combination of one person walking about a car dealer's lot at 2:50 a.m. and two others in a nearby car with lights out and motor running, parked next to the lot, justifies a police investigation, and the car driver's hand movement gave added justification to ordering the two persons out of the car for the officers' safety during the investigation. When they got out, with the light on inside the car, a small brown bottle was in plain view to a police officer who knew that such a bottle is typically a narcotics container "on the street" and therefore had probable cause to believe it was subject to seizure under the Fourth Amendment (just as in Texas v. Brown, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983), the officer knew that an opaque party balloonseen with a flashlight during a routine driver's license checkis typically a heroin container, and therefore had probable cause to seize it).
(On direct the officer in our case testified: "... I got approximately three feet from the vehicle on the passenger side when the passenger ... opened the door causing the interior light to go on ... and I observed the driver making a move or leaned over reaching for something on the front seat, fearing some type of weapon ordered the subject out of the vehicle, the passenger exited on his side and the driver on his side, I looked into the vehicle and I noticed on the floorboard of the driver's side a small brown bottle lying on the floorboard. I reached into the vehicle and retrieved a small brown bottle containing a brown substance believed to be cocaine...." On cross she testified that after ordering the persons out of the car: "Q. The driver's door was still open? A. Yes.... Q. After you placed them against the car and frisked them your partner stayed there and secured them, is that correct? A. Yes. Q. Then you looked into the vehicle, is that correct? A. Yes. Q. On the floorboard, which side? A. Driver's side. Q. And you found a brown bottle? A. Yes.... Q. You opened the bottle ...? What was in it? A. A white powdery substance, I opened it to look in it.... Q. It confirmed your suspicions? A. Yes. Q. Once you opened the bottle? A. No, my suspicions were confirmed when I picked up the bottle and looked at and saw the powdery substance. This type on the street usually contains narcotics.")