842 So.2d 330 (2003)
STATE of Louisiana
v.
James THOMPSON.
No. 2002-K-0333.
Supreme Court of Louisiana.
April 9, 2003.
*332 Richard P. Ieyoub, Attorney General, Eddie J. Jordan, Jr., District Attorney, Scott D. Peebles, for Applicant.
W. Keith Hurtt, J., for Respondent.
KNOLL, Justice.
The defendant, James Thompson, was originally convicted of two counts of simple possession of heroin. On appeal, the Fourth Circuit affirmed defendant's conviction *333 and sentence as to count two, but reversed count one. The court of appeal found that the police had lacked reasonable suspicion to initially stop the defendant, and as a result, lacked probable cause for the subsequent arrest and search of the defendant's vehicle. In response, the State sought writs to this Court. For reasons that follow, we now reverse the court of appeal. We hold that the police officers not only had reasonable suspicion to stop the defendant, but such suspicion ripened into probable cause when defendant furtively threw an object into his car as officers approached. Consequently, because exigent circumstances also existed, the search of defendant's vehicle was permissible under the "automobile exception" to the warrant requirement.

FACTS AND PROCEDURAL HISTORY
On June 17, 1999, defendant was indicted by a grand jury with two counts of possession with intent to distribute heroin, violations of La. R.S. 40:966(A)(1). Each count of the indictment stemmed from separate arrests occurring within one month of each other. On July 14, 1999, a hearing was held in response to defendant's motion to suppress evidence obtained and statements made to police relating to count one. At the suppression hearing, Sergeant Eddie Selby testified that an untested confidential informant had stated to police that a person he knew as "James," residing at 2475 North Claiborne Avenue, was responsible for distributing large quantities of heroin. Furthermore, the informant described James's vehicle as being a brown Delta 88 and also provided a license number. A subsequent check of the license plate revealed that it belonged to a "James Thompson" with an address in New Orleans East.
Based on this information, Selby and other members of the Fifth District Task Force established surveillance of the residence and the targeted vehicle which was parked out front. Selby testified that on the day in question, he observed the defendant exit the residence and remove a white object from his shirt pocket. The defendant then walked to the front passenger side door of the brown Delta 88 and placed the object towards the driver's side floorboard of the vehicle. Defendant then reentered the residence but soon reappeared holding a small infant whom he placed in the rear seat of the Delta 88. As defendant was about to get into his car, a unknown black male approached and engaged him in a conversation. The conversation led the two men to the sidewalk where an exchange of money was observed. Defendant then walked back to the passenger side of the vehicle, removed something from the floor area, and handed it to the unknown male who walked away from the scene. Defendant got into his car and drove off.
Selby further testified that he contacted back-up members of the Fifth District Task Force and requested that the unknown male seen walking away be stopped. In the meantime, Selby and other surveillance officers continued to follow defendant to the 1400 block of Music Street, only two blocks away, where he met with another unknown black male. While observing the two men, Selby was informed by members of his task force that the male seen outside the North Claiborne residence had spotted the officers, placed something into his mouth, and escaped on foot. Selby testified that because of the close proximity between defendant and his residence on Claiborne, he feared the individual could return either to the house or to the location where the defendant was currently located, and therefore elected to stop the defendant.
*334 As to the events that occurred next, Officer Selby testified:
As Officer Young and I approached Mr. Thompson, he was observedappeared to had tossed something into the vehicle from the back passenger's side door. We stopped; both officers alighted from the vehicle. Officer Young took Mr. Thompson and the other gentleman that he was speaking with into custody or detained them. I then looked into the passenger's side door of the vehicle and discovered a white tissue paper that was laying on the floorboard of the vehicle. I recovered it and discovered that it contained 14 packets of tin foil. I examined one of the packets of tin foil and discovered that it was a white powder substance that I believed was heroin based on the color and based on the packaging. Heroin is consistently packaged in tin foil.
Defendant was advised of his constitutional rights and placed under arrest. Officers then informed defendant of their intention to go back to the residence on North Claiborne with a search warrant to determine if there was any other narcotics at the location. During this time, the defendant admitted that the residence was his mother-in-law's house, and that the address in New Orleans East was where he resided with his mother and stepfather. After the officers drove the defendant back to the house, he indicated that there was more heroin located inside. The officers received a signed consent form to search the house from defendant's mother-in-law, and with the defendant's help, discovered the additional heroin along with other contraband, such as a scale for weighing and a tablespoon with residue. Defendant was subsequently taken to the Fifth District police station where he gave a full statement about selling drugs.
Based on the testimony of Sergeant Selby, the trial court found probable cause had existed to make the arrest and therefore denied both the motions to suppress. On July 26, 1999, following a one day bench trial, the court found defendant guilty of two counts of simple possession of heroin. Immediately after defendant was sentenced to ten years for each count to run consecutively without the benefit of probation, parole, or suspended sentence, the State filed a multiple bill of information charging him as a second offender. The defendant pleaded guilty to the multiple bill and the court vacated the previously imposed sentence as to count one only. Defendant was then resentenced to twenty years at hard labor to run consecutively with the original sentence imposed on count two.
In reversing defendant's conviction and sentence as to count one, the court of appeal concluded that due to a lack of corroboration, the informant's tip had been insufficient to form the basis for the stop of the defendant. Among other factors, the court highlighted that the tip stated that the defendant was selling large quantities from his residence, nevertheless, none of the testimony at the hearing or at trial indicated the officers saw any traffic in or out of the house; nothing in the tip indicated that the defendant routinely transported narcotics away from the residence to other locations; and, although defendant was observed in what Sergeant Selby considered a possible drug sale, the transaction was not done in a fashion consistent with any information provided by the untested informant. The court of appeal further rejected the state's contention that the white napkin was legally seized because it was in "plain view." The court noted that, according to State v. Hernandez, 410 So.2d 1381 (La.1982), one of the requirements for an object to be lawfully seized under the exception is that it must *335 be "immediately apparent without close inspection that the items are evidence or contraband," and nothing in Sergeant Selby's testimony indicated that he immediately recognized "white tissue paper" as narcotics or as typical packaging of narcotics. In the end, the court concluded that "even if Sergeant Selby had reasonable suspicion to conduct a valid Terry stop, we cannot say that the tissue paper is so peculiarly associated with the drug trade that its plain view equates to an association with contraband. A fortiori, in a case where there is no reasonable suspicion for a valid Terry stop, there can be no association of the tissue paper with illegal drugs."
We granted the State's writ application to evaluate the correctness of the court of appeal's findings relating to count one. State of Louisiana v. James Thompson, 02-K-0333 (La.11/18/02), 828 So.2d 1112.

DISCUSSION

Stop of Defendant
Reasonable suspicion for an investigatory stop is something less than probable cause and must be determined under the specific facts of each case by whether the officer had sufficient knowledge of particular facts and circumstances to justify the infringement on individual's right to be free from governmental interference. State v. Varnell, 410 So.2d 1108 (1982); State v. Bickham, 404 So.2d 929 (La.1981); State v. Blanton, 400 So.2d 661 (La.1981); State v. Ault, 394 So.2d 1192 (La.1981). We find the court of appeal improperly focused on inconsequential differences between the general information provided by the untested informant and events occurring on the day in question. Although the tip provided the impetus for establishing the surveillance, the officers clearly did not stop the defendant based on this information alone. Indeed, the officers directly observed a hand to hand transaction indicative of a narcotics sale: the defendant received money in exchange for an object he brought from his residence; the unknown male with whom he made the transaction had just arrived and then left immediately after the transaction; and lastly, the unknown male suspiciously put something into his mouth before fleeing from approaching officers. In determining whether or not reasonable cause exists to temporarily detain a person, the totality of the circumstances, "the whole picture," must be considered. State v. Belton, 441 So.2d 1195, 1198 (La.1983) (citing United States v. Cortez, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).) Accordingly, we hold that these activities, particularly when coupled with the tip that the defendant sold large amounts of heroin, gave police more than a sufficient basis to stop the defendant. See, e.g., State v. Robertson, 97-2960 (La.10/20/98), 721 So.2d 1268, 1270-71 ("The officers could have set up more extensive surveillance of defendant until they observed suspicious or unusual behavior. Furthermore, if, after corroborating the readily observable facts, the officers had noticed unusual or suspicious conduct on defendant's part, they would have had reasonable suspicion to detain him.").

Warrantless Search and Seizure
The critical issue presented in this case is the warrantless search and subsequent seizure of the folded napkin from the defendant's vehicle. It is well settled that a search and seizure conducted without a warrant issued on probable cause is per se unreasonable unless the warrantless seizure and search can be justified by one of the narrowly drawn exceptions to the warrant requirement. Goins v. Walmart Stores, Inc., 01-1136 (La.2001), 800 So.2d 783, 789; State v. Tatum, 466 So.2d 29, 31 (La.1985); State v. Redfearn, *336 441 So.2d 200 (La.1983); State v. Guzman, 362 So.2d 744, 748 (La.1978). The purpose of limiting warrantless searches to certain recognized exceptions is to preserve the constitutional safeguards provided by a warrant, while accommodating the necessity of warrantless searches under special circumstances. State v. Mayo, 450 So.2d 718 (La.App. 4 Cir.1984) (citing Donovan v. Dewey, 452 U.S. 594, 101 S.Ct. 2534, 69 L.Ed.2d 262 (1981); Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967)). The court of appeal concluded that the recovery of the heroin filled napkin from the defendant's car was unreasonable because it did not satisfy one of the three requirements under the "plain view" exception, namely that its incriminating character was not immediately apparent. See State v. Hernandez, 410 So.2d 1381 (La.1982); State v. Gibson, 391 So.2d 421 (La.1980); State v. Banks, 363 So.2d 491 (La.1978). However, we find the plain view doctrine is not dispositive of the difficult issue as to whether a napkin can be so peculiarly associated with drug trafficking that its plain view equates to an association with contraband. Compare Texas v. Brown, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) (seizure of heroin-filled opaque green balloon upheld), with State v. James, 99-3304 (La.12/8/02), 795 So.2d 1146 (seizure of film canister held impermissible). In State v. Parker, 355 So.2d 900 (La.1978), this Court recognized "[p]lain view serves to provide a means of securing probable cause, and, absent the applicability of one of the true exceptions to the warrant requirement, nothing more." Id. at 903. As will be discussed below, we find the officers had probable cause to search the vehicle, and therefore, this case is more appropriately analyzed under the "automobile exception."

Automobile Exception
Two requirements must be satisfied before a warrantless seizure of evidence within a movable vehicle can be authorized under this exception: (1) there must be probable cause to believe the vehicle contains contraband or evidence of a crime; and (2) there must be exigent circumstances requiring an immediate warrantless search. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); State v. Lopez, 00-0562 La.10/30/00), 772 So.2d 90; State v. Tatum, 466 So.2d 29 (La.1985); State v. Barre, 592 So.2d 440 (La.App. 5 Cir.1991). Probable cause means "a fair probability that contraband or evidence of a crime will be found." Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). It must be judged by the probabilities and practical considerations of everyday life on which average people, and particularly average police officers, can be expected to act. State v. Fischer, 97-1133 (La.1998), 720 So.2d 1179, 1884; State v. Flagg, 760 So.2d 522, 528 (La.App. 5 Cir. 2000).
In the instant case, we find that when defendant discarded the napkin as the officers approached, the officers' reasonable suspicions ripened into probable cause. While the furtive reaction alone was certainly insufficient to provide legal justification for the search, when the act is considered together with other facts known to the officers, the officers had a particularized basis for associating the object with narcotics trafficking. See Brown v. State, 269 Ga. 830, 504 S.E.2d 443, 446 (1998) ("Observation of what reasonably appear to be furtive gestures is a factor which may properly be taken into account in determining whether probable cause exists.... Thus, if the police see a person in possession of a highly suspicious object or some object which is not identifiable but *337 which because of other circumstances is reasonably suspected to be contraband, and then observe that person make an apparent attempt to conceal that object from police view, probable cause is then present."); State v. Baylor, 2 Kan.App.2d 722, 587 P.2d 343 (1978) (probable cause for search of narcotics suspect existed where furtive behavior was coupled with information provided by confidential informant that suspect was returning from trip with heroin in his possession). See also Jeffrey F. Ghent, Annotation, "Furtive" Movement or Gesture as Justifying Police Search, 45 A.L.R.3d 581, 1972 WL 31996 (1972). Before defendant's furtive reaction, the evidence shows that the police received a confidential tip that the defendant was selling large amounts of heroin. Indeed, all of the specific information provided to police, i.e., defendant's first name, type of vehicle he owned, and license plate number, proved to be accurate. During the course of the surveillance, police witnessed the defendant exit his residence with a "white object," place the object into his car, and shortly thereafter, engage in a quick hand to hand transaction where money was exchanged for the object. Officer Selby testified that he was later informed by back-up members of the task force that the person with whom the defendant made the transaction "ingested something or placed something into his mouth" before running from police. Lastly, at trial, Selby recounted that before entering defendant's vehicle, he looked inside and saw a "white" napkin lying on the floorboard, and that otherwise the vehicle was very clean and "free of any other debris or trash."[1] We find the totality of the evidence easily supports that the officers had probable cause.
Having established probable cause, we now find that exigent circumstances were also present because defendant's vehicle was on the open road. As this Court recognized in State v. Lopez, supra:
While the vehicle was stationary at the time the search proceeded, and the trooper may have had time to find a magistrate for purposes of issuing a search warrant, the trial court erred in ruling that the absence of a search warrant rendered the search of respondent's vehicle illegal. No constitutional distinction exists "between on the one hand seizing and holding a car before presenting *338 the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant.'" State v. Guzman, 362 So.2d 744, 749 (La.1978) (quoting Chambers v. Maroney, 399 U.S. 42-52, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970)). Because either course is reasonable under the Fourth Amendment, id., "[i]f a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment ... permits police to search the vehicle without more." Pennsylvania v. Labron, 518 U.S. 938, 940, 116 S.Ct. 2485, 2487, 135 L.Ed.2d 1031 (1996) (citations omitted).
Id. at 93 (alteration in original). See also State v. Edsall, 385 So.2d 207, 211 (La. 1980). Accordingly, because both probable cause and exigent circumstances existed, we hold the warrantless search of defendant's vehicle was permissible under the automobile exception.

EXCESSIVE SENTENCE
Defendant argues that if this Court should reinstate his conviction and sentence as to count one, the trial court's original sentence of twenty years, the maximum penalty allowed under the law for a second offender, should be vacated and the case remanded for imposition of a more equitable penalty. We disagree. The trial judge is given a wide discretion in the imposition of sentences within the statutory limits, and the sentence imposed by him should not be set aside as excessive in the absence of a manifest abuse of his discretion. State v. Washington, 414 So.2d 313 (La.1982); State v. Abercrumbia, 412 So.2d 1027 (La.1982). Our review of the trial court's reasons in imposing defendant's sentence reflects the sentencing court particularly took into consideration defendant's previous twenty-three felony and six misdemeanor arrests, in addition to an earlier conviction for possession of cocaine. Accordingly, we do not find the sentencing court abused its discretion. Defendant's assignment of error is without merit.

DECREE
For the foregoing reasons, the ruling of the Fourth Circuit as to count one is reversed and set aside, and defendant's original conviction and sentence imposed by the trial court is reinstated.
REVERSED
JOHNSON, J., dissents.
NOTES
[1] In State v. Williams, 117 N.J.Super. 372, 285 A.2d 23 (1971), the court found probable cause under facts almost identical to the instant case. In Williams, police conducted surveillance in response to complaints of narcotics activity in the neighborhood and observed defendant park his car and engage in conversation with a known narcotics offender. Afterwards, defendant drove away but returned a short time later. As soon as defendant parked his vehicle, a police car pulled up and parked behind him. A police officer and two detectives got out of the police car and approached defendant who was seated in his automobile. Before the officer could ask defendant for his registration, he observed defendant look toward him as he approached the car, and make a downward furtive motion, throwing a pink package to the floor of the car. One of the detectives reached down into the automobile and retrieved the pink package (which turned out to be tissue paper) and discovered it contained 114 decks of heroin. In finding warrantless search permissible, the court recognized the use or sale of illegal drugs is carried on "cautiously and furtively and in as many ways and by as many conceivable methods as human ingenuity can devise in order to escape detection and criminal consequences.'" Id. at 376, 285 A.2d 23. Most importantly, the court added, "[a]lthough the police officer on cross-examination stated that he had seen pink tissue in supermarkets similar to that removed from defendant's vehicle, this does not mean that it cannot be used to `package' illegal drugs and, when appearing in this form together with all the other factors previously alluded to, give rise to probable cause."