CLEON A. CANNIZZARO, JR., Judge.
STATEMENT OF THE CASE
On September 6, 2002, the State of Louisiana (the “State”) filed a bill of information charging the defendant, Leroy Carey, with possession of cocaine in violation of La. R.S. 40:967(C). On October 1, 2002, he pleaded not guilty to the charge. On December 5, 2002, a hearing was held on the defendant’s motion to suppress the evidence seized from his vehicle when he was arrested. On December 12, 2002, the trial court granted the defendant’s motion. The State has filed an application for supervisory writs with this Court asking this Court to review the trial court’s decision on the defendant’s motion to suppress.
STATEMENT OF THE FACTS
Sergeant Steven Gaudet, a twenty-eight year veteran of the New Orleans Police Department and the commander of a narcotics unit, testified that he was told by a reliable, confidential informant, whose previous tips had resulted in arrests and convictions, that there would be a delivery of an unknown amount of cocaine at the intersection of South Carrollton Avenue and Palmetto Street. The informant told Sergeant Gaudet that a “black male identified as ‘Leroy’ would be arriving in an older model white van, handicap van, with a raised roof, located on the right Rhand side.” The informant also stated that the vehicle had a “bent out rear bumper on the left rear of the van” and indicated the route that the vehicle would travel to its destination at the intersection where the cocaine was to be delivered. The infor *682 mant said that the van would be traveling from the Westbank of New Orleans to the intersection of Palmetto Street and Car-rollton Avenue along the route of U.S. Interstate 10.
Sergeant Gaudet testified that he used mobile surveillance to observe a vehicle travel the exact route that the informant stated it would travel. He first observed and began following the vehicle as it entered the toll plaza of the bridge that connects the Westbank to the interstate highway, and Sergeant Gaudet followed the vehicle without ever losing sight of it. The vehicle exited the interstate from the Carrollton Avenue exit near the intersection that the informant said was the van’s destination. Additionally, the vehicle matched “to a T” the description given by the confidential informant. Sergeant Gau-det testified further that as he was conducting mobile surveillance of the vehicle described by the informant, he was in communication with other members of his unit driving in an unmarked car in the area of the vehicle’s destination. Detective Kyle Hinrichs and Detective Trevor Reeves, two of the officers with whom Sergeant Gaudet was in communication, stopped the vehicle after it exited the interstate at the Carrol-ton Avenue exit but just before it would have reached the intersection of South Carrollton Avenue and Palmetto Street. Detectives Hinrichs and Reeves verified that the vehicle’s driver was a black male named Leroy.
Detective Hinrichs testified that after they signaled for the driver of the van to stop, the driver did so, and the two detectives exited their car. Detective Reeves approached the |3driver’s side of the van, and Detective Hinrichs approached the passenger side. Detective Hinrichs further testified that when he reached the passenger’s side of the vehicle, he observed the defendant looking over his left shoulder in the direction from which Detective Reeves was approaching the van. Detective Hinrichs observed the defendant remove a plastic bag from the van’s center console and put it into the van’s left cup holder. When Detective Reeves instructed the defendant to exit the van, Detective Hinrichs walked around to the driver’s side of the van and looked inside. Detective Hinrichs testified that he could not recognize what was in the plastic bag when he first saw it being taken from the console and put in the cup holder, but he also testified that when he picked up the bag, he immediately recognized the off-white powder substance packaged in five pieces of plastic as cocaine. The plastic bag was seized, and the defendant was then arrested.[1]
DISCUSSION

Investigatory Stop

The first issue to consider in the instant case is whether the officers who stopped the defendant had reasonable suspicion to conduct an investigatory stop. In Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court first recognized that “a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest.” 392 U.S. at 22, 88 S.Ct. at 1880. According to Terry, such an investigatory stop is not an *683 unlawful “seizure” and, therefore, does not violate the prohibition against [¿unreasonable searches and seizures established by the Fourth Amendment to the United States Constitution. U.S. Const, amend. IV.
In Louisiana there is statutory authorization for investigatory stops on less than the probable cause required for an arrest. La. C.Cr.P. art. 215.1(A) provides that “[a] law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.”
In State v. Dank, 99-0390 (La.App. 4 Cir. 5/24/2000), 764 So.2d 148, this Court explained the factors a reviewing court must consider in determining whether an investigatory stop was permissible. This Court stated:
“Reasonable suspicion” to stop is something less than the probable cause required for ah arrest, and the reviewing court must look to the facts and circumstances of each case.... Evidence derived from an unreasonable stop, i.e., seizure, will be excluded from trial. In assessing the reasonableness of an investigatory stop .... [t]he totality of the circumstances must be considered in determining whether reasonable suspicion exists. The detaining officers must have knowledge of specific, articu-lable facts, which, if taken together with rational inferences from those facts, reasonably warrant the stop. In reviewing the totality of the circumstances, the officer’s past experience, training and common sense may be considered....
99-0390, pp. 4-5; 764 So.2d at 155 (citations omitted).
In State v. Rodriguez, 396 So.2d 1312 (1981), the Louisiana Supreme Court indicated what constitutes a reasonable suspicion necessary for an investigatory stop. In that case a confidential informant told a police officer that a grey Mercury automobile with a particular license plate number would be in “Fat City” that night, carrying two males and one female who were in possession of one ounce of cocaine. The officer had received reliable information from the informant in the past that had resulted in one or two arrests and convictions. Believing the | ^informant to be reliable, the officer and one other officer proceeded to search for the vehicle. The two officers, each in an unmarked vehicle, began patrolling the parking areas and streets of Fat City. They soon located a vehicle fitting the exact description furnished by the informant. They stopped the vehicle.
The Supreme Court found that the officers had reasonable suspicion to stop the car. The officers admitted that they did not observe the occupants of the car commit a crime. The stop was based solely on their checking the informant’s tip and finding everything to be as represented.
The Supreme Court stated:
We hold the officers in this case conducted a valid investigatory stop. The reasonable suspicion required by article 215.1 is predicated upon the past reliability of the informant, verification by the officers of all specific items of supporting information, and the rational inferences to be drawn from information in such detail that only one with actual knowledge could provide it.
In State v. Robinson, 342 So.2d 183, 187 (La.1977), this court noted “it is recognized that an informant’s tip can provide a police officer with reasonable cause to detain and question a suspect.” We held an informant’s tip which may not have supplied the requisite probable cause to arrest, nevertheless, carried *684 with it enough “indicia of reliability” to justify at the least an investigatory stop of the defendant.
Id. at 1315.
The facts in the instant case support an investigatory stop as strongly as did the facts in the Rodñguez case. Sergeant Gaudet, an experienced police officer, received information from a confidential informant, whose previous information had led to arrests and convictions. The information received from the informant was that there would be a delivery of an unknown amount of cocaine at a specific location. The informant further stated that a black male named Leroy would be arriving at the location in a van that the informant described with particularized |fidetail as to its age, color, roof, handicap accessibility, and damaged bumper. Finally, the informant detailed the exact route that the vehicle would travel to its destination where the cocaine was to be delivered.
Two officers with whom Sergeant Gau-det was communicating while he had the suspect vehicle under mobile surveillance conducted an investigatory stop of the vehicle just before it would have reached the intersection the informant gave as the van’s destination. The two officers who stopped the van verified that the vehicle’s driver was, indeed, a black male named Leroy, just as the informant had stated.
This investigatory stop was completely justified under State v. Rodriguez, which required “past reliability of the informant, verification by the officers of all specific items of supporting information, and the rational inferences to be drawn from information in such detail that only one with actual knowledge could provide it.” 396 So.2d at 1315. In the instant case the confidential informant had been reliable in the past as evidenced by the arrests and convictions that had resulted from information he or she had given, the officers making the stop verified all of the specific items of supporting information supplied by the informant, and there was certainly a rational inference that the details included in the information could only have been supplied by someone with actual knowledge of the information.

Warrantless Seizure of Evidence

Once reasonable suspicion has been established, it is necessary to determine whether the warrantless seizure of cocaine that Detectives Hinriehs and Reeves made was authorized under an exception to the requirement that a search warrant must be obtained prior to seizing evidence. In State v. Thompson, 2002-0333 7(La.2003), 842 So.2d 330, the Louisiana Supreme Court discussed the subject of warrantless searches and seizures as follows:
It is well settled that a search and seizure conducted without a warrant issued on probable cause is per se unreasonable unless the warrantless seizure and search can be justified by one of the narrowly drawn exceptions to the warrant requirement.
2003-0333, p. 6, 842 So.2d at 335.
An exception to the requirement that a warrant must be obtained before evidence can be seized is the automobile exception. In Pennsylvania v. Labron, 518 U.S. 938, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996), the United States Supreme Court discussed the automobile exception as follows:
Our first cases establishing the automobile exception to the Fourth Amendment’s warrant requirement were based on the automobile’s “ready mobility,” an exigency sufficient to excuse failure to obtain a search warrant once probable cause to conduct the search is clear. More recent cases provide a further justification: the individual’s reduced expectation of privacy in an automobile, *685 owing to its pervasive regulation. If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more.
518 U.S. at 940,116 S.Ct. at 2487 (citations omitted).
In State v. Thompson, 2002-0333 (La.2003), 842 So.2d 330, the Louisiana Supreme Court also discussed the automobile exception as follows:
Two requirements must be satisfied before a warrantless seizure of evidence within a movable vehicle can be authorized under this exception: (1) there must be probable cause to believe the vehicle contains contraband or evidence of a crime; and (2) there must be exigent circumstances requiring an immediate warrantless search.
2002-0333, p. 7, 842 So.2d at 336.
Quoting Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983), the Louisiana Supreme Court stated that “a fair probability that contraband or evidence of a crime will be found” constitutes probable cause. Id. |sThe Court further stated that probable cause “must be judged by the probabilities and practical considerations of everyday life on which average people, and particularly average police officers, can be expected to act.” Id.
In the instant case, Detective Hinrichs, who, together with Detective Reeves, conducted the investigatory stop, observed the defendant looking over his left shoulder in the direction from which Detective Reeves was approaching the driver’s side of the van. Detective Hinrichs observed the defendant remove a plastic bag from the van’s center console and put it into the van’s left cup holder. This would make the bag less visible to Detective Reeves when he looked in the driver’s window. When the defendant exited the van, Detective Hinrichs went to the driver’s side of the van and looked inside. Because the defendant had removed a plastic bag from the console of the van and put it in the left cup holder as Detective Reeves was approaching, it is reasonable to conclude that Detective Hinrichs suspected that the plastic bag contained narcotics that the defendant was trying to hide. Detective Hin-richs could not determine exactly what was in the plastic bag when he saw it being moved from the center console to the cup holder, but when he picked up the bag, he immediately recognized the off-white powder substance packaged in five pieces of plastic as cocaine.
When the defendant appeared to be trying to hide the plastic bag as Detective Reeves approached the driver’s side window of the van, Officer Hinrich’s reasonable suspicion converted to probable cause. Although the furtive act alone was not sufficient to provide legal justification for the search, when the apparent attempt at hiding the plastic bag is considered with the facts already known by the detectives, it is clear that Detective Hinrichs had a “particularized basis for associating the object with narcotics trafficking.” Id. In the Thompson |flcase the Louisiana Supreme Court favorably cited a Kansas case for the proposition that probable cause for the search of a narcotics suspect existed where furtive behavior was coupled with information provided by a confidential informant that the suspect was returning from a trip with heroin in his possession. Id.
Probable cause was present in the instant case. For a warrantless search to be legally conducted, however, there must also be exigent circumstances. In the instant case, exigent circumstances were present. The defendant’s automobile was mobile and had the plastic bag not been seized when it was available, it would have, in all likelihood, been lost as evidence. *686 Therefore, because the necessary probable cause and the exigent circumstances required to satisfy the automobile exception converged in the instant case, the defendant’s motion to suppress the evidence obtained from his van should not have been granted. The seizure of the cocaine did not violate the restrictions on searches and seizures and was, therefore, obtained during a lawful search. The cocaine should be admissible at trial as evidence against the defendant.
CONCLUSION
The seizure in the instant case was the result of a lawful search. The defendant’s motion to suppress the evidence should have been denied. The trial court’s decision is reversed, and this case is remanded for further proceedings in accordance with this Court’s decision.
WRIT GRANTED; REVERSED AND REMANDED.
LOVE, J., DISSENTS WITH REASONS.

. It should be noted that there is nothing in the record of this case to indicate that the trial court did not completely accept the veracity of the testimony of Sergeant Gaudet and Detective Hinrichs. Further, on cross examination the defendant’s counsel did not try to discredit their testimony. The trial court stated, regarding whether the evidence seized should be suppressed, that “I think it is a close issue.” It is clear that the trial court believed the testimony that was given without any reservations.