CARAWAY, J.
L Gregg McKinney entered a no contest plea to simple arson causing damage in excess of $500, obstruction of justice, and malfeasance in office. The trial court sentenced McKinney to 15 years at hard labor, a fine of $2,000, and restitution of $21,000, for the simple arson conviction. McKinney received a sentence of 5 years at hard labor on the obstruction of justice conviction and 5 years at hard labor and restitution of $409 for the malfeasance in office conviction. The trial court ordered that all three sentences be served concurrently and that he be given credit for time served. McKinney seeks review of his sentence. We affirm.

Facts

As the result of events which occurred during McKinney’s term as Chief of Police of Delhi, Louisiana, the state originally charged him with aggravated arson, five *592 counts of obstruction of justice, conspiracy to distribute marijuana, twenty-six counts of malfeasance in office and theft. On August 18, 2006, McKinney entered an Alford[1] plea pursuant to a written plea agreement. In exchange for the dismissal of twenty-five charges and a reduction in the charge regarding arson, McKinney entered a plea of no contest to the reduced charge of simple arson, one count of obstruction of justice and one count of malfeasance in office. The plea agreement also provides that the imposed sentences would run concurrently. The sentence length imposed for each offense was subject to the discretion |¡>of the trial court after a pre-sentencing investigation. McKinney also agreed to resign from office effective the date of the plea and to notify the Louisiana Secretary of State that he would not seek re-election.
The state and McKinney agreed to submit transcripts of the preliminary examination, a copy of the investigative case report, a fire investigation report and evidence relating to the obstruction of justice claims. From this body of evidence relating to the charges, it is revealed that McKinney was investigated after concerns developed over his spending large sums of the town’s money on the purchase of illegal drugs for narcotics investigations. Also, McKinney hampered the District Attorney’s efforts for the production of narcotics evidence for court. Additionally, the investigation revealed a large amount of traffic tickets being written by the Delhi Police Department. Finally, an investigation occurred regarding the suspicious fire in McKinney’s office at the Delhi Police Department.
The facts show that a fire originated in McKinney’s office at approximately 5:30 a.m. on July 29, 2005. A report issued from the fire marshal’s office ultimately determined that the fire was the result of arson in which an accelerant, paint thinner, had been used. According to the report, the burn patterns on the wall were consistent with arson, and a combustible material had been poured on the couch in the office. From approximately 1:30 a.m. to 2:00 a.m. on the morning of the fire, police personnel observed McKinney placing personal items from his office into his truck. After McKinney left, an on-duty police officer heard a noise and discovered the fire. A Delhi Police drug informant revealed that McKinney told him that |she was going to burn the office to hide evidence of his wrongdoing. Within hours before the fire, defendant sent a letter, an email, and a series of text messages to his estranged wife, in which he threatened to kill himself and claimed that it would be her fault if he did. In one of the text messages, defendant wrote “paint thinner everywhere.”
While in the process of removing debris from McKinney’s office, investigators discovered that evidence from five separate narcotics cases had been placed in McKinney’s office at his instruction. In each of those cases, the evidence had been submitted to the crime lab for analysis and had tested positive for marijuana. Several evidence bags which had not been touched by fire or water evidenced that some of the marijuana had been removed as the bags had been cut open with a sharp instrument. McKinney was the only person with a key to his office.
Additional investigation showed that without proper legal authority, McKinney *593 opened a bank account in the name of the Delhi Police Department. The account was illegal because it had not been declared to the city for proper audit. Evidence established that $1,650 had been removed through use of an ATM card and that McKinney was the only person who had access to the account through the card. Further, the account was closed because it had been overdrawn.
Further investigation also revealed that money collected through traffic fines had not been remitted to the town of Delhi and had apparently been kept by McKinney. Upon comparison of the two receipt books normally utilized for traffic collections, investigators discovered that money |4from 37 tickets, a total of $7,786, had not been remitted to the town of Delhi. Of those 37, the envelopes for 19 were found in McKinney’s desk drawer during the investigation of the fire. The money from those 19 envelopes, a total of $4,479, was missing.
The investigators also discovered that on three separate occasions, search warrants were executed by the department and approximately $3,000 was confiscated during the searches. The confiscated money was not returned after the cases were dismissed. Additional discovery revealed that McKinney had ordered a Delhi police officer to make “money stops” of drivers traveling to work. The officer was ordered to stop the driver, issue a ticket for driving while suspended, collect the money for the fine, issue a receipt, and then let them go. McKinney ordered the officer to give him the money collected for the purchase of drugs for narcotics investigations. When the officer suspected that the practice was improper, he began documenting it. The money obtained through this practice was never recovered.
Documentation showed that the town of Delhi had provided the police department approximately $11,895 for “buy money” to be used in narcotics investigations. Town officials did not receive any of the money back, and previously believed that the narcotics bought with this money had been burned in the fire.
A drug informant gave a statement claiming that McKinney was giving him marijuana from the police department evidence locker to sell for the purchase of crack cocaine that was supposed to be placed back into | ¡-^evidence. The informant stated that because Chief McKinney was “short on some of the drugs” he needed the informant to sell marijuana to buy crack cocaine. McKinney supposedly gave the informant six bags of marijuana from the evidence room which the informant sold to an individual. When a Delhi police officer subsequently stopped the individual for suspicion of drug possession, McKinney showed up at the scene of the arrest and the drugs from that arrest were never recovered. The informant told investigators that he purchased approximately $8,000 worth of cocaine over the past year for the police department. He claimed to have made his narcotics purchases without supervision and stated that he would place the narcotics in a container on top of his trash can where McKinney would later retrieve it. The informant also told investigators that McKinney became angry with him for purchasing powder cocaine instead of crack cocaine on one occasion and had him “cook” the powder cocaine into crack cocaine.
After considering this evidence and a pre-sentence investigation report, the trial court sentenced McKinney to concurrent maximum sentences of 15 years at hard labor for simple arson, 5 years at hard labor for obstruction of justice, and 5 years at hard labor for malfeasance in office with credit for time served.

*594
Discussion

McKinney protests the imposition of maximum sentences for each crime. He complains that the imposed sentences are constitutionally excessive and that the trial court did not adequately consider mitigating circumstances and failed to articulate an adequate factual basis for the | ^sentence imposed or adequately consider an alternative or significantly less harsh sentence. Specifically McKinney argues that he was no differently situated from any other public officer charged with malfeasance in office and that he is not the worst of offenders. He contends that his actions, as a first offender, were the result of emotional and substance abuse problems that led to a breakdown in his personality and behavior. McKinney argues that his crimes were not the product of circumstances likely to recur because he is no longer in law enforcement and that with proper mental health care and substance abuse treatment he could be restored as a productive member of society. Thus he urges that he should have been given a suspended sentence with home incarceration and mandatory mental health treatment.
In reviewing claims of excessive sentence, an appellate court uses a two-step process. First, the record must show that the trial court took cognizance of the criteria set forth in La.C.Cr.P. art. 894.1. The articulation of the factual basis for a sentence is the goal of La.C.Cr.P. art. 894.1, not a rigid or mechanical compliance with its provisions. The trial court is not required to list every aggravating or mitigating circumstance so long as the record reflects that it adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688, 698 (La.1983); State v. Dunn, 30,767 (La.App. 2d Cir.6/24/98), 715 So.2d 641, 643. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La.C.Cr.P. art. 894.1. State v. Lanclos, 419 So.2d 475, 478 (La.1982). The important elements which should be considered are the defendant’s personal history (age, family |7ties, marital status, health, employment record), prior criminal record, seriousness of offense, and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049, 1051-52 (La.1981); State v. Haley, 38,258 (La.App. 2d Cir.4/22/04), 873 So.2d 747, 753, writ denied, 04-2606 (La.6/24/05), 904 So.2d 728.
Second, whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const, art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276, 1280 (La.1993); State v. Bonanno, 384 So.2d 355, 358 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288, 291 (La.1985).
There is no requirement that specific matters be given any particular weight at sentencing. State v. Jones, 33,111 (La.App.2d Cir.3/01/00), 754 So.2d 392, 394, writ denied, 00-1467 (La.2/02/01), 783 So.2d 385. As a general rule, maximum sentences are appropriate in cases involving the most serious violation of the offense and the worst type of offender. State v. Grissom, 29,718 (La.App. 2d Cir.8/20/97), 700 So.2d 541; State v. Walker, 573 So.2d 631 (La.App. 2d Cir.1991). Further, a substantial advantage obtained by means of a plea bargain, such as a reduction of charge where the evidence shows that the defendant was guilty of a more serious offense, is a legitimate con *595 sideration in sentencing. State v. Ross, 35,552 (La.App. 2d Cir.2/27/02), 811 So.2d 176, 179, citing State v. Smack, 425 So.2d 737 (La.1983), State v. Jackson, 27,056 (La.App. 2d Cir.6/21/95), 658 So.2d 722.
The trial court shall exercise its sentencing discretion to impose sentences according to the individualized circumstances of the offense and the offender. State v. Rogers, 405 So.2d 829, 831 (La.1981). A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case, and, therefore, is given broad discretion in sentencing. State v. Cook, 95-2784 (La.5/31/96), 674 So.2d 957, 958, cert. denied, Cook v. Louisiana, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996). While given wide discretion to impose sentence within the statutory limits, the sentence imposed by the trial court should not be set aside as excessive in the absence of a manifest abuse of his discretion. State v. Williams, 03-3514 (La.12/13/04), 893 So.2d 7, 16, citing State v. Thompson, 02-0333 (La.4/9/03), 842 So.2d 330, State v. Washington, 414 So.2d 313 (La.1982); State v. Abercrumbia, 412 So.2d 1027 (La.1982); State v. Hardy, 39,233 (La.App. 2d Cir.1/26/05), 892 So.2d 710, 712-713. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. State v. Cook, 674 So.2d at 959.
At the sentencing hearing, the trial court noted the terms of the plea agreement, the contents of the pre-sen-tence investigation report, the details of defendant’s personal family history, and the details of defendant’s educational and employment history. In so doing, the trial court found that |9“[t]he defendant had a normal childhood and solid work record in both civilian and law enforcement work prior to his arrest for these charges.” The trial court reviewed the many letters of support from friends and family explaining defendant’s contributions to his family and community. The trial court took note of the letters from defendant’s present wife, children, and stepchildren, who expressed their need for defendant’s financial and emotional support.
Before imposing the sentence, the trial court specifically noted that it had considered the contents of the pre-sentence investigation, the mitigating factors presented by defendant, and the sentencing guidelines of La.C.Cr.P. art. 894.1. In reviewing mitigating factors, the trial court noted that defendant had no prior criminal history, a good work history, and was a respected law enforcement officer before suspicion of the present crimes arose. The trial court considered that imprisonment would pose a financial and emotional hardship on defendant’s family and that McKinney possessed an extensive history of community service in addition to making monetary contributions to the less fortunate. The trial court also regarded the fact that incarceration would further harm the good reputation of defendant’s family and hinder his ability to participate in their lives.
In aggravation, the trial court noted that McKinney violated his oath of office as police chief and the public trust of law enforcement and the criminal justice system. The trial court considered that McKinney exposed others to physical harm when he set fire to his office at the police department and the danger posed to the firemen called to put out the fire. |10The trial court observed that the defendant used his position of power to commit the offenses and profited from the commission of these offenses. The town of Delhi suffered financial loss and loss of public confidence due to his conduct. The trial court found that defendant’s conduct was the *596 result of circumstances likely to recur because of the continuing nature of these offenses which he committed over the course of several months. The trial court considered the benefit of the plea agreement which reduced McKinney’s potential sentencing exposure through the dismissal of several charges and the agreement of concurrent sentences. The trial court also noted that defendant had not compensated the victims for their loss of money, property, or reputation. The trial court concluded that as a high ranking law enforcement officer, McKinney was held to a higher standard of conduct and that his behavior warrants serious punishment.
Because of these aggravating factors, the trial court found that defendant posed an undue risk of committing another crime if allowed probation or a suspended sentence, that he was in need of correctional treatment or a custodial environment, and, that a lesser sentence would deprecate the seriousness of his crimes. Thus, a review of the record indicates that the trial court was cognizant of the sentencing considerations of La.C.Cr.P. art. 894.1. Moreover, the record clearly indicates that the trial court thoroughly considered the mitigating circumstances and that it articulated a detailed factual basis for the sentence imposed.
McKinney faced sentencing exposure for the simple arson conviction of not less than 2 years nor more than 15 years at hard labor. La. R.S. |n!4:52(B) For the obstruction of justice conviction, McKinney faced imprisonment for not more than 5 years, with or without hard labor. La. R.S. 14:130.1. Finally for the malfeasance in office conviction, McKinney had sentencing exposure of not more than 5 years, with or without hard labor. La. R.S. 14:134.
Initially, we note that the distinguishing element in the charged crime of aggravated arson, as opposed to simple arson, is the foreseeability of the endangerment of human life. This danger was present in the occupied public building to which defendant’s act of arson applied. Aggravated arson has a sentencing range of not less than six nor more than twenty years. La. R.S. 14:51. Therefore, the defendant received a substantial reduction in his exposure for the reduced arson charge. Further reduction resulted from the exclusion of the other charges regarding separate incidents of obstruction of justice, malfeasance, theft and drug-related violations. We find therefore that a substantial advantage was gained by McKinney as a result of the plea bargain.
Given the long period of time over which the defendant abused the power of his office and the multiple ways in which he did so, the facts of this ease are sufficient to qualify McKinney as the worst offender for each of these offenses. McKinney’s criminal conduct constituted an abuse of power that severely undermined the reputation of government, law enforcement, and the criminal justice system in a small town. Moreover, McKinney blatantly abused his position of authority to manipulate innocent 1 ^individuals for his personal gain and advantage. This additionally justifies the imposition of the maximum sentences for each offense of conviction.
McKinney’s request for a less harsh sentence with mental health and substance abuse treatment is rejected as he denied during his pre-sentence investigation having a substance abuse problem or any form of mental illness. In the light of these circumstances and the fact that defendant received a tremendous reduction in sentencing exposure through his plea agreement, the maximum sentence for these three offenses does not shock the sense of justice. Thus, the trial court did not abuse its discretion, and the sentences are not *597 constitutionally excessive. McKinney’s convictions and sentences are affirmed.
AFFIRMED.

. The plea was taken in accordance with North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), which requires the establishment of a factual basis for the plea when a defendant protests his innocence but determines that a guilty plea is in his best interest.