MOORE, J.
 

 |, After a one-car accident resulted in the death of a passenger, the state charged the driver with vehicular homicide. After trial, a jury found the defendant guilty of negligent homicide, a violation of La. R.S. 14:32. Thereafter, the defendant was sentenced to five years of imprisonment at hard labor. Defendant now appeals his conviction and sentence. We affirm.
 

 FACTS
 

 On July 19, 2003, George Knight (“defendant” herein) and his longtime friend, Stephen L. Coburn, were involved in a one-car accident sometime after 2:00 a.m. on U.S. Highway 80 in West Monroe, Louisiana. Police and emergency personnel arriving on the scene found the defendant near the vehicle and Mr. Coburn 30-40 feet away from the vehicle. Mr. Coburn was pronounced dead at the scene of the accident. The defendant, who was responsive to initial questioning by an officer, confirmed his identity and ownership of the truck, and he indicated that he was the driver of the vehicle.
 

 
 *1167
 
 The defendant was transported to a local hospital where he was treated for his injuries. At the hospital, the defendant denied he was the driver of the vehicle. Blood alcohol testing showed both the defendant and the victim were legally intoxicated at the time of the accident.
 

 The defendant was initially charged with negligent homicide. The charge was later amended to vehicular homicide. A jury found the defendant guilty of the responsive charge of negligent homicide. Thereafter, the defendant was sentenced to five years at hard labor with credit for time served. The defendant filed a motion to reconsider sentence 12which the trial judge denied. This appeal ensued.
 

 DISCUSSION
 

 Defendant raises five assignments of error on appeal. Because his third assignment of error concerns the sufficiency of evidence to convict him of negligent homicide, we consider it first.
 
 [1]
 
 By this assignment, the defendant contends that the jury verdict was contrary to the law and evidence under
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Specifically, he argues that the state failed to sufficiently establish that he was the driver of the truck at the time of the accident.
 

 When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under
 
 Hudson v. Louisiana,
 
 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with
 
 Jackson v. Virginia,
 
 in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt.
 
 State v. Hearold,
 
 603 So.2d 731 (La.1992);
 
 State v. Bosley,
 
 29,253 (La.App. 2 Cir. 4/2/97), 691 So.2d 347,
 
 writ denied,
 
 97-1203 (La.10/17/97), 701 So.2d 1333. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the | .¡evidence for that of the fact finder.
 
 State v. Pigford,
 
 2005-0477 (La.2/22/06), 922 So.2d 517;
 
 State v. Dotie,
 
 43,819 (La.App. 2 Cir. 1/14/09), 1 So.3d 833. The appellate court does not assess the credibility of witnesses or reweigh evidence.
 
 State v. Smith,
 
 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part.
 
 State v. Eason,
 
 43,788 (La.App. 2 Cir. 2/25/09), 3 So.3d 685;
 
 State v. Hill,
 
 42,025 (La.App. 2 Cir. 5/9/07), 956 So.2d 758,
 
 writ denied,
 
 2007-1209 (La.12/14/07), 970 So.2d 529.
 
 See also, State v. Bowie,
 
 43,374 (La.App. 2 Cir. 9/24/08), 997 So.2d 36.
 

 The
 
 Jackson
 
 standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime.
 
 State v. Sutton,
 
 436 So.2d 471 (La.1983);
 
 State v. Speed,
 
 43,786 (La.
 
 *1168
 
 App. 2 Cir. 1/14/09), 2 So.3d 582;
 
 State v. Parker,
 
 42,311 (La.App. 2 Cir. 8/15/07), 963 So.2d 497. When circumstantial evidence is used to convict, the statutory rule is that, assuming every fact to be proved that the evidence tends to prove, it must exclude every reasonable hypothesis of innocence. La. R.S. 15:438. The circumstantial evidence rule may not establish a |4stricter standard of review than
 
 Jackson v. Virginia
 
 but it emphasizes the need for careful observance of the usual standard and provides a helpful methodology for its implementation in cases which hinge on the evaluation of circumstantial evidence.
 
 State v. Nealy,
 
 450 So.2d 634 (La.1984);
 
 State v. Blake,
 
 575 So.2d 906 (La.App. 2 Cir. 2/27/91).
 

 In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion.
 
 State v. Gullette,
 
 43,032 (La.App. 2 Cir. 2/13/08), 975 So.2d 753;
 
 State v. Burd,
 
 40,480 (La.App. 2 Cir. 1/27/06), 921 So.2d 219,
 
 writ denied,
 
 2006-1083 (La.11/9/06), 941 So.2d 35.
 

 The defendant contends that he was not the driver of the vehicle, and that the evidence at trial was insufficient to prove this fact beyond a reasonable doubt. He complains that Louisiana State Trooper Chris Jordan (Jordan) assumed that the defendant was the driver of the vehicle under the mistaken belief (at the time) that he was the only occupant. Louisiana State Trooper David Cummings (Cummings), he contends, incorrectly relied on Jordan’s assumption. The defendant also complains that there was not a full accident reconstruction, and that Lieutenant Tommy Lewis (Lewis), a Louisiana State Trooper, and the accident reconstructionist, based his testimony on mere “simple physics” and “occupant behavior.” The defendant contends that the testimony of Dr. Frank Peretti that the defendant’s injuries were consistent with him being the driver are unscientific. This last allegation is treated in a separate assignment of error. | ^Finally, the defendant contends that there is no forensic or DNA evidence to prove he was the driver.
 

 The evidence that the defendant was the driver of the vehicle consisted of circumstantial, direct, and physical evidence and expert testimony. Viewed under the
 
 Jackson
 
 standard, for the following reasons, we conclude that this evidence established beyond a reasonable doubt that the defendant was the driver of the vehicle and was sufficient beyond a reasonable doubt to convict the defendant of negligent homicide.
 

 Trooper Jordan testified that he was the first officer to arrive at the accident scene. He observed paramedics were working on a person a few feet from the vehicle. Jordan spoke with paramedics to see if the person they were assisting had a driver’s license. Jordan was not aware at that time that there was another person, the victim, involved in the accident. Jordan was given a driver’s license from a wallet removed from the defendant’s pocket. Jordan then attempted to verify that it was the same person lying on the ground three to five feet away from the truck. The defendant responded to questions that the license was his and that he owned the truck. When asked if he was driving, the defendant responded “yes.” Jordan testified that the defendant was “very coherent at that point” and responded without hesitancy or any observable difficulties. He said that his questioning of the defendant was part of the standard procedure used to gather information.
 

 Trooper Cummings testified that he was the lead investigator in the case. Already on the scene were ambulance personnel, Ouachita Parish Fire Department person
 
 *1169
 
 nel and Trooper Jordan. Cummings did a survey of the |ficrash scene and received the defendant’s license from Jordan, who identified the defendant as the driver of the vehicle.
 

 In surveying the scene, Cummings noted there was debris, including beer cans, scattered over the roadway and near the truck. Cummings also found “yaw marks” or scrape marks in the roadway. Cummings explained that yaw marks are made by a vehicle as it travels down a roadway with the tires still rolling, but turned on their edge without braking. Cummings was able to determine where the accident began by following the markings left by the vehicle. In describing where the accident began, Cummings testified:
 

 This roadway was a slight right hand curve, kind of downhill slope. Just as you come out of the curve, you can see where the right rear tire went off the roadway and then the vehicle immediately began yawing, which is where the vehicle rotated. You know, it started rotating in the road. There was [sic] scrape marks to where the left rear tire went down, dug into the asphalt, which caused the vehicle to roll over, slide on its hood, which left scrape marks on the roadway. And then where it ... when it hit the edge of the roadway, it’s on its hood and kind of on ... at an angle on its hood and its roof. And when it hit the edge of the roadway, it flipped. And when it flipped, that’s when the passenger come out, got crushed and then the vehicle continued to roll before it came to final rest.
 

 Cummings stated that he was sure the markings were associated with the accident as they were “fresh” that night and had not started to disappear. Cummings determined only one vehicle was involved and that the occupants were the defendant and the victim, who was pronounced dead on the scene. Cummings indicated he took pictures of the scene as well as measurements using a light pole as his reference point. Cummings also indicated he was able to determine that the speed of the vehicle at the time |7of the accident was 65 miles per hour, in excess of the 45 miles per hour speed limit.
 

 During his testimony, Cummings identified the photographs (P-2 through P-52) that he took of the scene and the vehicle. Cummings also identified drawings (P-53 and P-55) he made of the accident scene. He measured the tread of the vehicle’s tires but did not find that the low tire tread played any significance in the accident. After his investigation, during the early morning hours and later that day, Cummings concluded that the defendant was the driver of the vehicle based on the position of the victim’s body at the accident scene, “indications in the roadway,” and the way the defendant would have been ejected from the vehicle. Cummings made contact with the defendant, identifying him through his driver’s license and his hospital wristband, at the hospital to return his driver’s license and issue him a citation for negligent homicide. Cummings noticed that the defendant’s injuries appeared to be to his left side.
 

 Lieutenant Lewis was qualified by the trial court as an expert in the field of accident reconstruction. When Lewis arrived at the accident scene, it had been secured, and he was briefed by Cummings. Based on information concerning the vehicle’s occupants and where the ejection of the victim took place, the direction the vehicle traveled after it began to skid, as well as the defendant’s injuries, the officers determined that the defendant had been the driver of the vehicle.
 

 Lewis noted that the deceased victim had to have been ejected through the passenger window first. Lewis testified that simulators of |8“occupant behavior” have
 
 *1170
 
 consistently shown, when two people are sitting in a car, that once the vehicle starts going from side-to-side the momentum of the vehicle would cause the passenger to be ejected first and that the driver would have injuries to the left side because the driver would hit the driver’s side door and possibly make contact with the roadway, if the windows of the vehicle were broken out. Lewis stated that it would be impossible for a driver to leave the passenger window, as it appeared in this case, unless the passenger had already been ejected from the vehicle.
 

 After reviewing photographs from the scene for the jury and noting that an official opinion of the accident was formed, he stated:
 

 Yes, sir. I did. I believe the vehicle was traveling westbound in ... in the westbound. I believe that the ... that the pickup truck failed to negotiate a curve, went straight instead of taking the curve to the right, ran off the right side of the road. I believe then that the driver of that vehicle steered hard to the right, causing the vehicle to get sideways in the roadway. I believe as it got sideways on the roadway, I believe that the tires came in contact with road and it ... it caused that left rear tire to break down. The rim caught and I think ... and it caused it to turn over on its roof and it slid on its roof, causing scrapes, going back across back into the westbound lane. And as it went over, that passenger ... that side that caught and it made the vehicle continue to go over and ... and we saw that there was a — Mr. Coburn’s body laying there. And we determined that as the vehicle was going side to side, rolling over, that ... that the momentum caused from that and the occupants that were in the vehicle, that the passenger came out first, the vehicle continued to go over, and then that the driver was ... remained with the vehicle.
 

 Turning now to the elements of the offense, La. R.S. 14:32 provides, in pertinent part:
 

 A. Negligent homicide is either of the following:
 

 (1) The killing of a human being by
 

 criminal negligence.
 

 |flB. The violation of a statute or ordinance shall be considered only as presumptive evidence of such negligence.
 

 Criminal negligence exists when, although neither specific nor general intent is present, there is such disregard of the interest of others that the offender’s conduct amounts to a gross deviation of the standard of care expected to be maintained by a reasonably careful man under like circumstances. La. R.S. 14:12. Unlike general or specific criminal intent, criminal negligence is essentially negative in its nature, consisting of a kind of privation. Rather than requiring that the accused intend some consequence of his actions, criminal negligence is found from the accused’s gross disregard for the consequences of his actions.
 
 State v. Martin,
 
 539 So.2d 1235 (La.1989);
 
 State v. Beason,
 
 26,725 (La.App. 2 Cir. 4/7/95), 653 So.2d 1274,
 
 writ denied,
 
 95-1388 (La.10/27/95), 661 So.2d 1359;
 
 State v. Wilcoxon,
 
 26,126 (La.App. 2 Cir. 06/22/94), 639 So.2d 385. Ordinary negligence does not equate to criminal negligence. Thus, the state is required to show more than a mere deviation from the standard of ordinary care.
 
 State v. Wilcoxon, supra.
 

 The state presented sufficient evidence for the jury to find the defendant guilty of negligent homicide. The state was able to show that the defendant, while driving with a blood alcohol content of more than two times the legal limit, caused the accident which killed the victim. Mr. Barnhill, qualified as an expert in forensic toxicology and the effects of alcohol on human beings, testified that the defen
 
 *1171
 
 dant’s high blood alcohol level would have caused impairment in any individual. Specifically, at the levels found in the defendant’s blood, Mr. Barnhill believed the average 110person would be greatly impaired. As the symptoms of impairment could not have gone unnoticed by the defendant, it is reasonable for the jury to conclude that the defendant’s actions were made with such disregard to the interest of the victim and others, and that the defendant’s action amounted to a gross deviation of the standard of care expected to be maintained by a reasonably careful man under like circumstances. It is generally not expected that a person would drive while his blood alcohol level is more than twice the legal limit.
 

 We also conclude that, on the evidence discussed above, the state negated the defendant’s contention that he was not the driver. The investigating officer as well as his supervisor concluded that based on the accident investigation, the location of both the victim’s body and the defendant’s body, and the defendant’s injuries, it would have been nearly impossible for the victim to have been the driver of the vehicle. The state also presented the testimony of the first law enforcement officer to arrive on the scene of the accident. The officer testified that the defendant, when questioned, stated that the truck belonged to him and that he was driving at the time of the accident. Additionally, Dr. Peretti testified that the victim died as a result of multiple injuries which were consistent with him being a passenger in the vehicle. The victim’s injuries were consistent with him being ejected and then rolled over by the vehicle. Dr. Peretti also testified that the defendant’s injuries were typical of those a driver would receive when involved in an automobile accident. As would be generally noted, the defendant’s injuries were primarily located on his left side. The testimony of|nthe witnesses was sufficient to establish that the defendant was the driver of the vehicle at the time of the accident. This assignment of error is without merit.
 

 We turn now to the remaining assignments of error in numerical order.
 

 By his first assignment of error, the defendant contends that the trial court erred in refusing to grant a mistrial because of the misconduct of the prosecuting attorney in questioning the defendant about a prior criminal charge in which he had been acquitted.
 

 Prior to the defendant’s cross-examination, the defense moved for a motion
 
 in limine,
 
 which the trial court granted, specifically prohibiting the state from questioning the defendant about any matter (arrests) that had not led to a conviction. During the cross-examination, the prosecutor asked the defendant about a third DWI arrest he had not mentioned during direct examination. The prosecutor then asked the defendant if his license had been suspended in 200B, and why it was suspended. The defendant replied, “I was stopped and they smelled alcohol on my breath.” When the prosecutor asked the disposition of the matter, the defendant replied he was found not guilty. The defendant indicates the state violated the order, and the state was not “mistaken or surprised when George Knight said he was found not guilty.” The defense attorney then asked that the jury be removed.
 

 Defense counsel requested a mistrial arguing that there was evidence that the defendant had been found not guilty of the charge and that the | ^state’s question was inappropriate and would unduly prejudice the jury. The state responded that the jury would not be prejudiced and that the question was related to the defendant’s credibility. The prosecutor told the trial court he was unaware of the disposition of the case, but was attempting to obtain information about the defendant’s driver’s
 
 *1172
 
 license being suspended. The trial court informed the prosecutor that he could not go into the facts of any conviction. After the discussion, the trial court ruled.
 

 Mr. Britton, based on his record I do not think that he’s already admitted to, I do not think its going to prejudice him at all. I am going to deny your motion for mistrial, understanding you’re objecting to my ruling.”
 

 Once the jury returned, the trial court gave the jury this admonishment:
 

 ... Ladies and gentleman of the jury, just before you exited there was a question and answer about a non-conviction. You are to disregard any question or answer in reference to any non-conviction. This is not competent legal evidence and would be improper for you as a juror to consider. Your final decision should only be based on legally admitted testimony or evidence. Do you understand that instruction?
 

 [[Image here]]
 

 Is there anyone here that has any doubt about them being able to follow that instruction? If so, please raise your hand. Not seeing any hands raised, you may proceed.
 

 The state admits that the “unskilled questioning by an inexperienced prosecutor” may have been improper, but the trial court did not abuse its discretion when it denied the mistrial. The state further contends that even if the trial court was in error in failing to grant the mistrial, under the harmless error analysis, the error did not contribute to the verdict.
 

 The law in this area is well settled. As this court stated in
 
 State v. Smith,
 
 43,136 (La.App. 2 Cir. 4/23/08), 981 So.2d 200:
 

 11sLa. C.E. art. 404(B) provides that evidence of other crimes, acts or wrongs is generally not admissible. La. C. Cr. P. art. 770(2) provides that a mistrial shall be granted upon motion of the defendant when a remark or comment is made within the hearing of the jury by the judge, district attorney, or a court official during trial or in argument and that remark refers to another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible.
 
 State v. Ellis,
 
 42,520 (La.App. 2 Cir. 09/26/07), 966 So.2d 139.
 

 Even if a mistrial was warranted under Art. 770, 771, or 775, the failure to grant a mistrial would not result in an automatic reversal of defendant’s conviction, but would be a trial error subject to the harmless error analysis on appeal.
 
 State v. Givens,
 
 99-3518 (La.1/17/01), 776 So.2d 443,
 
 appeal after remand,
 
 04-0765 (La.App. 4 Cir. 10/27/04), 888 So.2d 329,
 
 writ denied,
 
 04-2919 (La.3/18/05), 896 So.2d 1003,
 
 cert. denied,
 
 546 U.S. 867, 126 S.Ct. 154, 163 L.Ed.2d 154 (2005);
 
 State v. Johnson,
 
 94-1379 (La.11/27/95), 664 So.2d 94. Trial error is harmless where the verdict rendered is “surely unattributable to the error.”
 
 State v. Johnson, supra.
 

 Mistrial is a drastic remedy, and the determination of whether the defendant has been prejudiced by the prosecutor’s argument lies within the sound discretion of the trial judge.
 
 State v. Hall,
 
 43,125 (La.App. 2 Cir. 6/4/08), 986 So.2d 863;
 
 State v. Williams,
 
 41,731 (La.App. 2 Cir. 1/24/07), 950 So.2d 126,
 
 writ denied,
 
 2007-0465 (La.11/2/07), 966 So.2d 599.
 

 We conclude that the conduct of the prosecution was inexcusable misconduct and cannot be attributed merely to inexperience. The questioning by the prosecutor was clearly improper in that it referenced a prior arrest that did not lead to a conviction. The questioning was clearly 114related to “another crime committed or alleged to have been committed by the defendant as to which the evidence is not admissible” La. C. Cr. P. art. 770(2). The defendant had not been convicted of the crime, and the prosecutor admitted he did
 
 *1173
 
 not have evidence of a conviction. Even if it is assumed that the prosecutor was attempting to elicit the information merely for the purposes of attacking the defendant’s credibility, the details or facts of the arrest or stop and the defendant’s driver’s license suspension would not have been admissible. The trial court acknowledged this fact in its discussion of the matter. Further, the prosecutor was in violation of the trial court’s ruling on the defense motion
 
 in limine
 
 which specifically informed the prosecutor that he could only question the defendant about convictions. It was incumbent upon the prosecutor to know the disposition of the case before questioning the defendant.
 

 Finding that the trial court did err in denying the mistrial, this court must analyze the error under a harmless error analysis and determine if the verdict rendered is “surely unattributable to the error.”
 
 State v. Johnson, supra.
 

 Sufficient evidence was presented to show that the defendant was intoxicated at the time the accident occurred and, while the defendant denied driving the vehicle, it was shown that he was the driver. The state presented testimony showing that the defendant’s injuries were consistent with him being the driver of the vehicle and that, immediately after the accident, the defendant admitted that he was the driver of the vehicle. Additionally, as noted by the trial court, the defendant did have three prior |ir,arrests for DWI to which he admitted. Considering the fact that the defendant indicated to the jury that he had been found not guilty of the questionable DWI, it is doubtful that the line of questioning contributed to the verdict. Further, the trial court’s admonishment could have been a sufficient curative measure. This assignment of error is without merit.
 

 By his second assignment of error, the defendant contends that the trial court erred when it allowed the pathologist, Dr. Peretti, who examined the decedent in the accident, to give expert testimony about the defendant’s medical records. The defendant argues that the trial court incorrectly allowed Dr. Peretti to testify regarding the defendant’s “pattern of injuries” sustained during the accident. Furthermore, he contends that Dr. Peretti’s opinion testimony was a last minute surprise, and the introduction of the evidence that the defendant’s injuries were consistent with him being the driver of the vehicle was unfair and violated his due process right to a fair trial.
 

 The standard for accepting expert testimony was set forth in
 
 State v. Foret,
 
 628 So.2d 1116 (La.1993), wherein the supreme court adopted the test set forth in
 
 Daubert v. Merrell Dow Pharmaceuticals, Inc.,
 
 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993);
 
 State v. Boudreaux,
 
 41,660 (La.App. 2 Cir. 12/13/06), 945 So.2d 898.
 
 Daubert
 
 requires the trial court to act in a gatekeeping function to ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.
 
 State v. Chauvin,
 
 02-1188 (La.5/20/03), 846 So.2d 697. A trial court has great discretion in determining the competence of an expert witness, and that | ^determination will not be overturned absent an abuse of discretion. La. C.E. art. 702.
 
 State v. Gipson,
 
 37,132 (La.App. 2 Cir. 6/25/03), 850 So.2d 973,
 
 writ denied,
 
 03-2238 (La.1/30/04), 865 So.2d 75. The test of competency of an expert is his knowledge of the subject about which he is called upon to express an opinion. A combination of specialized training, work experience and practical application of the expert’s knowledge can combine to demonstrate that a person is an expert.
 
 State v. Gipson, supra.
 

 
 *1174
 
 While the defendant initially stipulated to Dr. Peretti’s qualifications as an expert in the field of forensic pathology, when the state began to question Dr. Peretti regarding the defendant’s medical record, the defense lodged an objection. The defendant requested and was granted a
 
 Daubert
 
 hearing. During the hearing, the state elicited testimony from Dr. Peretti showing that he had performed numerous autopsies and evaluated patterns of injuries in deceased people. Dr. Peretti testified he is a licensed physician with subspecialty training in forensic pathology which included interpreting patterns of injuries and rendering opinions as to cause and manner of death. As a physician, Dr. Peretti indicated he could review medical records and give opinions.
 

 The state tendered the witness, and was asked to discuss his qualifications in relation to the elements of
 
 Daubert.
 
 The state noted that Dr. Peretti testified he had experience as a forensic pathologist for nearly 20 years. The state noted that Dr. Peretti indicated he had seen articles regarding the interpretation of patterns of injury in peer review publications and some medical journals, though he was not able to specifically name any |17articles. However, Dr. Peretti had not established whether the theory had been tested. The trial court indicated the defendant needed to elicit additional information from Dr. Peretti in an attempt to address all elements. In additional questioning, Dr. Per-etti noted that he was aware of four or five textbooks containing the information. He also stated that he was a former editor of the
 
 Journal of Forensic Medicine and Pathology
 
 and all of its articles are “peer reviewed” before publication. Dr. Peretti testified that forensic pathologists are trained to recognize patterns of injury. The trial court qualified Dr. Peretti as an expert in “pathology which encompasses the patterns, interpreting patterns of injury.”
 

 Through Dr. Peretti’s testimony during the
 
 Daubert
 
 hearing, the state presented evidence that Dr. Peretti is knowledgeable in the subject area in which he was called to express an opinion. Specifically, Dr. Peretti noted that he was a licensed physician and trained in forensic pathology, and he was called upon to interpret the patterns of injuries associated with deceased persons. The skill of interpreting the injuries was directly transferable to interpreting injuries of a living person based on their medical records. Dr. Peretti’s specialized training, work experience, and practical application (prior testimony as an expert) of the expert’s knowledge combined to demonstrate that Dr. Peretti was an expert in the tendered fields. We conclude that the trial court did not abuse its discretion in allowing Dr. Peretti to testify regarding the defendant’s injuries. This assignment of error is without merit.
 

 11 sin his fourth assignment of error, the defendant contends that his maximum sentence is excessive for his conviction of negligent homicide. The defendant argues that he is not the most egregious and blameworthy of offenders. The defendant indicates he and the decedent were best friends over 30 years. The decedent’s sister acknowledged the decedent was intoxicated at the time of the accident and the decedent easily could have been on trial for the defendant’s murder. The defendant also notes that the decedent’s brother and sister suggested probation for the defendant despite the fact that some other family members requested a maximum sentence.
 

 The test imposed by the reviewing court in determining the exces-siveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggrava
 
 *1175
 
 ting or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article.
 
 State v. Smith,
 
 433 So.2d 688 (La.1983);
 
 State v. Lathan,
 
 41,855 (La.App. 2 Cir. 2/28/07), 953 So.2d 890,
 
 writ denied,
 
 07-0805 (La.3/28/08), 978 So.2d 297. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1.
 
 State v. Lanclos,
 
 419 So.2d 475 (La.1982);
 
 State v. Hampton,
 
 38,017 (La.App. 2 Cir. 1/28/04), 865 So.2d 284,
 
 writs denied,
 
 04-0834 (La.3/11/05), 896 So.2d 57 and 04-2380 (La.6/3/05), 903 So.2d 452. The important elements which should be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation.
 
 State v. Jones,
 
 398 So.2d 1049 (La.1981);
 
 State v. Haley,
 
 38,258 (La.App. 2 Cir. 4/22/04), 873 So.2d 747,
 
 writ denied,
 
 04-2606 (La.6/24/05), 904 So.2d 728. There is no requirement that specific matters be given any particular weight at sentencing.
 
 State v. Swayzer,
 
 43,350 (La.App. 2 Cir. 8/13/08), 989 So.2d 267;
 
 State v. Shumaker,
 
 41,547 (La.App. 2 Cir. 12/13/06), 945 So.2d 277,
 
 writ denied,
 
 07-0144 (La.9/28/07), 964 So.2d 35.
 

 Second, a sentence violates La. Const, art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering.
 
 State v. Smith,
 
 01-2574 (La.1/14/03), 839 So.2d 1;
 
 State v. Dorthey,
 
 623 So.2d 1276 (La.1993). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice.
 
 State v. Weaver,
 
 01-0467 (La.1/15/02), 805 So.2d 166;
 
 State v. Lobato,
 
 603 So.2d 739 (La.1992);
 
 State v. Robinson,
 
 40,983 (La.App. 2 Cir. 1/24/07), 948 So.2d 379.
 

 The trial judge is given a wide discretion in the imposition of sentences within the statutory limits, and the sentence imposed by him should not be set aside as excessive in the absence of a manifest abuse of his discretion.
 
 State v. Williams,
 
 03-3514 (La.12/13/04), 893 So.2d 7;
 
 State v. Thompson,
 
 02-0333 (La.4/9/03), 842 So.2d 330.
 

 12f)The defendant was sentenced to five years at hard labor with credit for time served. Following his sentencing, the defendant filed a motion to reconsider sentence which was denied by the trial court. In the motion to reconsider sentence, the defendant alleged the sentence imposed was “cruel and unusual and beyond the scope of the court’s authority.”
 

 The record shows that the trial judge considered the appropriate sentencing factors prior to imposing the sentence. During the sentencing hearing, the trial judge summarized the presentence investigation noting the defendant’s self-reported social history and also noting that the defendant stated he and the victim had been close friends for a long time. The trial judge found that the defendant’s claims of not having a drinking problem were belied by the defendant’s arrest history which the trial judge characterized as “extensive.”
 

 The trial judge reviewed the sentencing guidelines listed in La. C. Cr. P. art. 894.1, finding that the defendant’s conduct caused serious harm, that there was no substantial grounds for excusing or justifying the defendant’s behavior, and that the victim’s independent criminal conduct did not induce or facilitate the commission of the crime. Additionally, the trial judge found that the defendant had not and could not make compensation for the loss of the
 
 *1176
 
 victim’s life. The trial judge concluded that the defendant’s character and attitude indicated that he would commit another crime and he would not respond affirmatively to probation.
 
 Id.
 
 Finally, the trial judge concluded that the defendant’s conviction did not reflect the “true crime” that was committed. As an aggravating factor, the court observed that the defendant J^had not accepted responsibility for his action and that he had in fact tried to transfer responsibility to the victim. The defendant’s “good work history” was considered as a mitigating factor in the case.
 
 Id.
 

 In determining the sentence, the trial judge also considered the fact that there would be an undue risk that during a period of a suspended sentence or probation that the defendant would commit another crime and that the defendant was in need of correctional treatment or a custodial environment that could be provided most effectively by his commitment to an institution.
 

 We concluded that the trial court did not abuse its discretion in imposing the defendant’s sentence. The sentence imposed, though a maximum sentence, is appropriate and particularized for this offender. Despite the defendant’s first offender status he had numerous arrests for traffic-related offenses including three previous arrests and two convictions for DWI-first offense. The evidence presented in this case showed that alcohol was more probable than not a contributing factor to the accident. Both the defendant and the victim’s blood alcohol levels were twice the legal limit at the time of the accident. Further, the trial court found that the defendant’s actions caused great emotional harm to the victim’s family and despite the defendant’s claims that he was a great longtime friend of the victim, the defendant had not shown any remorse for his actions.
 

 The defendant contends that some of the victim’s family members were in agreement with him receiving a probated sentence; however, he failed to acknowledge the fact that the family’s agreement had been ^obtained by the state to facilitate a plea agreement offered to the defendant prior to trial. As noted in the presentence investigation, the family members who were contacted believed their lives had been irreparably changed and that the defendant had not shown any remorse for his actions. The family members who chose to comment on sentencing indicated their desire for the defendant to receive the maximum sentence. Despite the fact that the imposed sentence is the maximum punishment for the crime of which the defendant was convicted of, when considering the crime and punishment viewed in light of the harm done to society, the sentence does not shock the sense of justice. This assignment of error is without merit.
 

 By his final assignment of error, the defendant contends that his alleged admissions after the accident that he was driving the vehicle should not have been allowed at trial pursuant to La. R.S. 15:451. The defendant argues that while making the statements, his blood alcohol content level was .24 grams percent, that he was in pain, confused, and was being treated by emergency medical personnel. The defendant notes that he was observed to be confused an hour after the accident and he could not remember the circumstances of the accident. The facts, the defendant argues, make the statement inadmissible.
 

 La. R.S. 15:451 concerns the “free and voluntary rule” as a “condition precedent to use of a confession.” The term “admission” is applied to those matters of fact which do not involve criminal intent; the term “confession” is applied only to an admission of guilt, not to an aeknowledg-
 
 *1177
 
 merit of facts merely tending to establish guilt.” La. R.S. 15:449. Additionally, the freehand voluntary rule does not apply to admissions not involving criminal intent. La. R.S. 15:454.
 

 Prior to the start of the trial, a free and voluntary hearing was held to determine the admissibility of the defendant’s statements made to Tpr. Jordan soon after the accident. Jordan, who was off-duty at the time, was traveling home and was in the area when he heard the call of the accident with injuries. Jordan testified he arrived at the scene of the accident and made contact with the paramedics who were treating the defendant. At that time, the defendant was lying three to five feet from his vehicle and was conscious and responsive. Jordan asked one of the paramedics if the defendant had a wallet on his person. Jordan was given the wallet and located the defendant’s driver’s license. At this point, Jordan asked the defendant if he was George Knight, whether the vehicle belonged to him and whether he had been driving. The defendant responded “yes” to each of the questions.
 
 Id.
 
 The defendant was not advised of his
 
 Miranda
 
 rights.
 

 Jordan then went back to his vehicle and “started doing stuff for the accident.” Jordan indicated he did not advise the defendant of his
 
 Miranda
 
 rights because he “had no reason to believe there was a criminal act” or that “it [sic] was a fatality at that point.” He said the questioning was simply standard procedure. Jordan stated he did not find out until later that there was another person involved in the accident and the initial call for the accident was that of an “injury wreck” or crash with injuries. Jordan believed he was the first law enforcement officer to arrive on the scene.
 
 Id.
 

 1240n cross-examination, Jordan testified the defendant was receiving medical treatment during the questioning. While Jordan believed “at the very least somebody could get a ticket,” he was not conducting a criminal investigation at that time. Jordan stated he did not know alcohol was involved in the accident and he was not close enough to the defendant to smell any alcohol emitting from his person. Jordan also testified that he did not have any information about the defendant’s injuries or what treatment he was receiving on the scene. Jordan recalled that the defendant was responsive and answered the questions posed to him. Jordan stated that the questions he asked were typical of what an officer arriving on the scene would ask to ascertain information about the accident in either a criminal or civil offense. Jordan reiterated that the defendant had not been in custody at the time of questioning. Jordan did not author a report for the accident, but did provide a written statement that was made part of the investigating officer’s report. After the testimony, the state argued that there had not been a custodial interrogation and
 
 Miranda
 
 warnings had not been necessary for the officer to obtain the basic information from the defendant. The trial court found that the defendant had not been in custody and it was not necessary to advise him of his
 
 Miranda
 
 rights before questioning. The trial court also found that the officer was merely investigating the accident which was proper under the circumstances.
 

 The trial court did not err in admitting the defendant’s statements to Trooper Jordan. Jordan testified that he was conducting a preliminary investigation of a traffic accident, in an attempt to determine the facts and | ^circumstances of the accident, when he questioned the defendant. Jordan made a simple inquiry of the defendant to aid in his general investigation. The defendant had not been identified as a suspect in any wrongdoings at the time he was questioned; therefore,
 
 Miranda
 
 warnings were not required prior to the ques
 
 *1178
 
 tioning. While the defendant was under the influence of alcohol, Jordan testified that he appeared coherent. The defendant was apparently coherent enough to provide appropriate responses to the questions posed to him; thus, in this instance, the mere fact of the defendant’s intoxication is not sufficient to vitiate his statement.
 
 State v. Davis,
 
 92-1623 (La.5/23/94), 637 So.2d 1012,
 
 cert. denied,
 
 513 U.S. 975, 115 S.Ct. 450, 130 L.Ed.2d 359 (1994).
 

 This assignment of error is without merit.
 

 CONCLUSION
 

 The defendant’s conviction and sentence are affirmed.
 

 CONVICTION AND SENTENCE AFFIRMED.
 

 [1]
 

 . Even though in his other assignments the appellant alleges trial error regarding the admissibility of certain evidence, we consider first whether the evidence adduced was sufficient to sustain the conviction.